IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:09cr186

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| ROYCE MITCHELL | ) | |
| | ) | |

**THIS MATTER** is before the Court upon motion by the defendant to reopen his supervised release hearing based on a claim of newly discovered evidence (Doc. No. 32), the government's response in opposition (Doc. No. 33), and the defendant's reply (Doc. No. 34).

I.  BACKGROUND

The Court held a hearing on November 24 and 25, 2009, on a petition alleging the defendant had violated the terms of his supervised release by having sexual intercourse with his fifteen year-old adopted sister, Tiffany Wright, in violation of North Carolina law prohibiting statutory rape and taking indecent liberties with a child. (No. 1-4: Petition for Revocation at 2; Doc. No. 2: Petition Addendum at 1); N.C. Gen. Stat. § 14-27.7A (statutory rape); N.C. Gen. Stat. § 14-202.1 (indecent liberties).

During the hearing, the Court admitted certain hearsay statements by Wright, including a recorded interview of her conducted by a Charlotte-Mecklenburg Police Department ("CMPD") detective in August 2009 .[1] At the conclusion of the hearing, the Court found that Wright's claim about having sex with the defendant two times in February 2009 was credible and demonstrably reliable.

---

[1] Wright was unavailable to testify at the hearing because she was shot and killed in September 2009 while waiting at a school bus stop.

However, the Court found Wright was impeached regarding her sexual history with other men and the paternity of the child she was carrying at the time of her death.[2]

Part of that impeachment came through Adrian Powell, a witness called by the defendant during his case-in-chief on November 24. Powell testified that he and Tiffany Wright had sexual intercourse several times in June 2009, always using a condom, and that Wright told him that he was the baby's father. This contradicted Wright's statement that she had sex one time with Powell and that the defendant was the father.[3] Powell admitted on cross-examination that he did not speak to the police after being informed of Wright's death and that his family moved to Buffalo, New York, within a week of the murder.

According to the instant motion, response, and reply, a CMPD detective obtained a warrant to take a DNA sample from Powell while he was back in North Carolina for the defendant's hearing. The detective told the AUSA responsible for the defendant's case about the warrant during the hearing. She directed the detective not to inform Powell about it until after he testified and advised him that it was not necessary to disclose the warrant to defense counsel. Even so, the detective informed defense counsel's investigator about the warrant and offered to provide him a copy, which the investigator refused.

The Court recessed for the day after the defendant attempted to call Randy Walker to testify concerning the results of a polygraph test that he administered to the defendant. The government moved to exclude Walker's testimony on the grounds that evidence concerning the polygraph test would

---

[2] There was no dispute at the time of the hearing that the defendant was not the father of the child based on DNA testing.

[3] During the recorded interview, Wright admitted that her previous claim that Powell was the father was wrong based on the date they sex.

2

improperly bolster the defendant's credibility which had not been attacked[4] and because the government had no opportunity to observe the examination or adequate time to review Walker's report.[5] The government further argued that polygraph testing results are inadmissible because they are inherently unreliable.[6]

The following day, the Court granted the government's motion and did not permit Walker to testify. Defense counsel did not attempt to recall Adrian Powell or complain to the Court about not receiving a copy of the warrant from the AUSA. At the conclusion of the hearing, the Court found by a preponderance of evidence that the defendant had committed the crimes of statutory rape and taking indecent liberties in violation of his supervised release terms. The Court sentenced him to thirty months' imprisonment and two years' supervised release.

II.     DISCUSSION

The defendant seeks to reopen his supervised release hearing based upon an allegation that the government was aware at the time of the hearing, but failed to disclose to defense counsel, that Powell was considered a suspect in Wright's murder. (Doc. No. 32: Motion at ¶ 1). The defendant argues this information is favorable to him; thus, the government's alleged non-disclosure violates Brady v.

---

[4] The defendant chose not to testify during the hearing.

[5] Defense counsel provided the government the polygraph examiner's report at 4 p.m. on November 23, the day before the hearing, although the test had been conducted on October 31. (Rough Nov. 24, 2009, Hearing Tr. at 316-317; Doc. No. 32: Motion at ¶ 11).

[6] The government moved orally to exclude Walker's testimony (Rough Nov. 24, 2009, Hearing Tr. at 315-317) and then filed a written motion overnight (Doc. No. 31).

Maryland, 373 U.S. 83 (1963).[7] The defendant further argues that this information warrants allowing Walker to testify, as either an expert or lay witness, regarding the defendant's statements to him during the polygraph interview. (Doc. No. 32: Motion ¶¶ 8-9).

The government responds that the facts that CMPD investigators consider Powell as a suspect in Wright's murder and that a court issued a warrant to collect a DNA sample from Powell do not constitute Brady material. (Doc. No. 33: Response at ¶¶ 3-4). The government further argues that defense counsel was aware from discovery previously provided that Powell was a person of interest in the murder and that the government disclosed the DNA order through the detective's conversation with defense counsel's investigator. (Id. at ¶¶ 1-2).

Under Brady, a prosecutor is obligated to disclose evidence, even if only known to police investigators, that is "materially favorable to the accused." Youngblood v. West Virginia, 547 U.S. 867, 869-70 (2006). The Brady duty covers both impeachment and exculpatory evidence. Id. at 869. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. at 870 (internal quotation marks and citations omitted). A conviction must be reversed if it is shown that "the favorable evidence could be taken to put the whole case in such a different light as to undermine confidence in the verdict." Id. (internal quotation marks and citations omitted).

Here, the defendant only argues that the police suspicion of Powell as the murderer and father of the child would have "undermine[d] the testimony of both Powell and Wright" (Doc. No. 32: Motion at

---

[7] Prior to the hearing, a magistrate judge had ordered the government disclose all Brady and impeachment material in its possession. (Doc. No. 23: Order).

4

¶ 4); he does not argue that suspicion is itself exculpatory as to the allegations of statutory rape and taking indecent liberties. In Giglio v. United States, 405 U.S. 150, 152-154 (1972) and United States v. Bagley, 473 U.S. 667, 678 (1985), the Supreme Court found that prosecutors violated defendants' due process rights when they failed to disclose immunity agreements with government witnesses. The defendant has not cited any case, nor is the Court aware of any, extending the Giglio rule to witnesses called by the defendant.[8] Thus, the defendant has not established that the government had an obligation to provide evidence to impeach Powell, a witness not called by the prosecution.

Even if the government had such an obligation, police suspicion has no impeachment value as to Powell. It could not have given him bias during the hearing because it was not communicated to him until after he had testified. The fact that police think he could be the father is not evidence in and of itself that would contradict what Powell said about his relationship with Wright. Additionally, the defendant wanted the Court to believe Powell's testimony that he had sex with Wright several times in June 2009, always with a condom, to discredit Wright's statements that she only had sex with Powell once and that he was the father of her child. Thus, impeaching Powell with police suspicion would not have been favorable to the defendant.

The Court found that Wright's statements regarding the paternity of the child and the frequency of her sexual encounters with men other than the defendant were discredited even without hearing the additional information. Thus, whatever impeachment value the information had as to Wright, the desired

---

[8] In fact, the Forth Circuit has recognized the Bagley-Giglio rule as applying to government witnesses. Monroe v. Angelone, 323 F.3d 286, 300 (4th Cir. 2003); United States v. Trevino, 89 F.3d 187, 189 (4th Cir. 1996); United States v. Kelly, 35 F.3d 929, 936 (4th Cir. 1994).

5

result was accomplished without it. Police suspicion about Powell could not reasonably affect the whole case and undermine confidence in the outcome because Powell's potential paternity has no bearing on the whether defendant violated his supervised release terms by also having sex with Wright. Therefore, the information is not material. See Campbell v. Polk, 447 F.3d 270, 276 (4th Cir. 2006) (holding allegedly undisclosed evidence immaterial because, although it tended to impeach a witness's credibility, it provided "little, if any, independent support" to the defendant's theory of the case).

Police suspicion of Powell's potential paternity or status as a murder suspect also fails to establish a reason to reopen the hearing and to allow Walker to testify regarding statements made to him by the defendant and to offer an opinion about the defendant's truthfulness. A defendant's own out-of-court statement is hearsay when offered by him. Fed. R. Evid. 801. However, "demonstrably reliable" hearsay is admissible in revocation hearings. United States v. McCallum, 677 F.2d 1024, 1026 (4th Cir. 1982). Here, the defendant sought to establish the reliability of his hearsay statements, made after he had been charged with violating his supervised release terms, by introducing the results of a polygraph examination administered by Walker during the hearing. The government objected on the basis that polygraph results are inherently unreliable, particularly since the testing was done without the government's opportunity to observe. The Court agreed and found that none of the cases cited by the defendant in his memorandum had approved the introduction of the results of polygraph examinations, even in supervised release hearings.[9]

---

[9] Defense counsel submitted a memorandum during the hearing after the government objected to Walker's testimony. In the memorandum, counsel wrote, "Courts, including the Fourth Circuit, have also found that failing a polygraph examination can potentially provide evidence of a supervised release violation or can be a supervised release violation in its own right." (Doc. No. 35: Memorandum at 1).

In the instant motion to reopen, the defendant has not provided any additional legal basis for the admission of the polygraph results, nor has he established the reliability of his post-charging hearsay statements. Instead, defense counsel recounts that "the Court stated in its findings that a CMPD Detective's opinion of Tiffany Wright's credibility formulated a basis for his decision" yet the Court excluded the polygraph examiner's testimony about the defendant's truthfulness. (Doc. No. 34: Reply at ¶ 6).

Defense counsel significantly misstates the Court's ruling. In fact, the Court sustained the defendant's objection to the government's attempt to elicit Det. Johnson's opinion of Wright's truthfulness. (Rough Nov. 24, 2009, Hearing Tr. at 21-22). On cross examination, defense counsel asked Det. Johnson whether she declined to interview other individuals during her investigation because she believed Wright's story. (Id. at 23, 35). It was only then that Det. Johnson was allowed to state that she believed what Wright had said during her interview. (Id.). Once the door had been opened by defense counsel, the Court permitted the government to ask on re-direct whether Det. Johnson found Wright credible, but only to establish why Det. Johnson had not pressed her truthfulness during the interview. (Id. at 36-37).

In other words, the Court permitted the government to do what defense counsel had done on

---

However, a review of the cited cases revealed that they merely approved polygraph testing as a condition of supervised release or admitted statements made by a defendant in a polygraph test, not the results, as evidence of a violation. See United States v. Miller, 175 F.3d 1017, at *1 (4th Cir. Mar. 22, 1999) (unpublished) (defendant lied to probation officer about polygraph administered at work); United States v. Crenshaw, 315 F. App'x 166, at *1-2 (11th Cir. 2008) (defendant made incriminating statements to polygraph examiner); United States v. Locke, 482 F.3d 764, (5th Cir. 2007) (no Fifth Amendment violation where defendant was required to take polygraph test and answers were used to establish supervised release violation).

cross-examination, that is, to explore why the detective did not do something in her investigation. Det. Johnson's opinion, received for that limited purpose, did not in any way form a basis for the Court's determination of Wright's credibility or its ultimate finding that the defendant had violated the terms of his supervised release.[10] (Rough Nov. 25, 2009, Hearing Tr. at 42-51). Accordingly, there still exists no basis to allow Walker to testify about the defendant's hearsay statements to him, the results of the polygraph, or his opinion about the defendant's truthfulness.

III. CONCLUSION

Because the Court has found the additional information about police suspicion of Powell has little to no impeachment value and is not material, it unnecessary to examine whether the government adequately disclosed the information through the CMPD detective, or whether defense counsel could have discovered the information through reasonable diligence.

**IT IS, THEREFORE, ORDERED** that the defendant's motion to reopen his supervised release hearing (Doc. No. 32) is **DENIED**.

Signed: December 22, 2009

Robert J. Conrad, Jr.
Chief United States District Judge

---

[10] Indeed, the Court interrupted the government's argument when the AUSA began to address Det. Johnson's assessment of Wright's statement. (Rough Hearing Tr. at 9).